Order Form (01/2005)

# United States District Court, Northern District of Illinois



| Name of Assigned Judge or Magistrate Judge | William J. Hibbler | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 11 C 5217 | **DATE** | August 4, 2011 |
| **CASE TITLE** | Stanley Boclair (A-60451) vs. Randle, et al. | | |

DOCKET ENTRY TEXT

Plaintiff's motion for leave to file *in forma pauperis* [3] is granted. The Court orders the trust fund officer at Plaintiff's current place of incarceration to deduct $11.64 from Plaintiff's account for payment to the Clerk of Court as an initial partial filing fee. The Clerk is directed to send a copy of this order to the trust fund officer at Stateville Correctional Center. The Clerk shall also: (1) dismiss Defendants Michael Randle, Guy Pierce, Gladyse Taylor, and Illinois Department of Corrections; (2) issue summons for Defendant Marcus Hardy; and (3) send Plaintiff a Magistrate Judge Consent Form, Instructions for Submitting Documents, and a copy of this order. Plaintiff's motion for appointment of counsel [4] is denied without prejudice.

■[ For further details see text below.]

Docketing to mail notices.

## STATEMENT

Plaintiff, Stanley Boclair, an inmate at Stateville Correctional Center, brings this *pro se* civil rights action pursuant to 42 U.S.C. § 1983.

Plaintiff is granted leave to file *in forma pauperis*. Pursuant to 28 U.S.C. § 1915(b)(1), Plaintiff is assessed an initial partial filing fee of $11.64. The trust fund officer at Plaintiff's current place of incarceration is ordered to collect, when funds exist, the partial filing fee from Plaintiff's trust fund account and pay it directly to the Clerk of Court. After payment of the initial partial filing fee, the trust fund officer at the correctional facility where Plaintiff is confined is authorized to collect monthly payments from Plaintiff's trust fund account in an amount equal to 20% of the preceding month's income credited to the account. Monthly payments collected from Plaintiff's trust fund account shall be forwarded to the Clerk of Court each time the amount in the account exceeds $10 until the full $350 filing fee is paid. All payments shall be sent to the Clerk, United States District Court, 219 S. Dearborn St., Chicago, Il. 60604, attn: Cashier's Desk, 20th Floor, and shall clearly identify Plaintiff's name and the case number assigned to this action.

Under 28 U.S.C. § 1915A, the Court is required to conduct a prompt review of the complaint.

Plaintiff alleges that on October 1, 2007, he signed into the protective custody unit while housed at the Pontiac Detention Center in light of issues with some gangs. Warden Pierce subsequently denied Plaintiff protective custody status at Pontiac. Plaintiff appealed the denial of protective custody and the Administrative Review Board subsequently issued a hearing report that contained "critical errors." Plaintiff was subsequently moved to Stateville on August 11, 2010.

Fearing for his safety at Stateville, Plaintiff sought to be placed in protective custody on August 17, 2010. On October 26, 2010, Warden Hardy denied Plaintiff's request without comment. Illinois Department of Corrections Director Taylor concurred with the denial of Plaintiff's appeal of the denial of his placement in protective custody on December 22, 2010.

On January 14, 2011, an attorney mailed Warden Hardy a grievance that Plaintiff signed on January 2, 2011. On January 23, 2011, Plaintiff submitted an emergency grievance to Warden Hardy regarding his concerns for his safety. Warden Hardy denied the grievance as being an emergency on February 4, 2011. However, on February 1, 2011, Plaintiff was attacked by another inmate in the yard. Subsequently, Plaintiff has been placed in units with inmates that are members of the "security threat groups" that caused Plaintiff to seek protective custody in the first

place.

Plaintiff names previous-IDOC Director Randle, Pontiac Warden Pierce, IDOC Director Taylor, Stateville Warden Hardy, and the IDOC as Defendants in both their individual and official capacities. Plaintiff seeks both compensatory and injunctive relief.

As to Plaintiff's official capacity claims, claims filed against government officers in their official capacity are actually claims against the government entity for which the officers work. *See Kentucky v. Graham*, 473 U.S. 159, 167 (1985); *Guzman v. Sheahan*, 495 F.3d 852, 859 (7th Cir. 2007). A governmental entity is liable for damages under Section 1983 only if the plaintiff can show that the alleged constitutional deprivation occurred as a result of an official policy, custom, or practice. *See Monell v. Department of Social Serv.*, 436 U.S. 658, 692 (1978) Unconstitutional policies or customs generally take three forms: (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a usage or custom with the force of law; or (3) a constitutional injury was caused by a person with final policy-making authority. *Brokaw v. Mercer County*, 235 F.3d 1000, 1013 (7th Cir.2000). Plaintiff does make any allegations regarding his denial of protective custody being based on an official policy, custom, or practice. Accordingly, Plaintiff's official capacity claims are dismissed.

As to individual capacity claims, liability under the Civil Rights Act requires a defendant's personal involvement in the alleged constitutional violation. *See Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir. 2003). Furthermore, a supervisory official cannot be held liable for the conduct of his subordinates based upon a theory of respondeat superior, and a complaint's allegations must indicate that the supervisory official was somehow personally involved in the constitutional deprivation. *Perkins v. Lawson*, 312 F.3d 872, 875 (7th Cir. 2002).

First, Plaintiff's claims regarding his protective custody status at Pontiac are improperly joined with his claims regarding Stateville. *See George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (a complaint may not allege unrelated claims against different defendants – such claims belong in different suits). Furthermore, Plaintiff's claims regarding his denial of protective custody while at Pontiac and his transfer to Stateville do not appear to state a claim. While Plaintiff sought protective custody while at Pontiac due to a perceived threat, his failure to be placed in protective custody did not result in any harm to him. In addition, Plaintiff has no right to be incarcerated in the facility of his choosing. *See Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1996).

In addition, Plaintiff's allegations as to the previous and present Director of IDOC do not state a claim as they fail to demonstrate their personnel involvement in the alleged constitutional violation based on simply concurring with the findings of subordinates. The allegations do not rise to an inference that they were aware of a risk to Plaintiff's safety. *See Grieveson v. Anderson*, 538 F.3d 763, 775 (7th Cir. 2008) (to succeed on a claim based on a prison official's failure to protect an inmate, a plaintiff must demonstrate that: (1) the conditions of his confinement posed a substantial risk of harm and (2) that a prison official was deliberately indifferent to that risk).

Based on the above, Plaintiff may proceed with his claim against Warden Hardy; the remaining Defendants are dismissed.

The United States Marshals Service is appointed to serve Defendant Marcus Hardy. Any service forms necessary for Plaintiff to complete will be sent by the Marshal as appropriate to serve Defendant with process. The U.S. Marshal is directed to make all reasonable efforts to serve Defendant. With respect to any former employee who can no longer be found at the work address provided by Plaintiff, the Illinois Department of Corrections shall furnish the Marshal with Defendant's last-known address. The information shall be used only for purposes of effectuating service [or for proof of service, should a dispute arise] and any documentation of the address shall be retained only by the Marshal. Address information shall not be maintained in the court file, nor disclosed by the Marshal. The Marshal is authorized to mail a request for waiver of service to Defendant in the manner prescribed by Fed. R. Civ. P. 4(d)(2) before attempting personal service.

Plaintiff is instructed to file all future papers concerning this action with the Clerk of Court in care of the Prisoner Correspondent. Plaintiff must provide the Court with the original plus a complete judge's copy, including any exhibits, of every document filed. In addition, Plaintiff must send an exact copy of any court filing to the Defendant [or to defense counsel, once an attorney has entered an appearance on behalf of the Defendant]. Every document filed with the Court must include a certificate of service stating to whom exact copies were mailed and the date of mailing. Any paper that is sent directly to the judge or that otherwise fails to comply with these instructions may be disregarded by the Court or returned to Plaintiff.

## STATEMENT

Plaintiff has also filed a motion for appointment of counsel. Plaintiff's motion for appointment of counsel is denied. Civil litigants do not have a constitutional or statutory right to counsel. *See Johnson v. Doughty*, 433 F.3d 1001, 1006 (7th Cir. 2006). Nevertheless, a district court may, in its discretion, "request an attorney to represent any person unable to afford counsel." *Gil v. Reed*, 381 F.3d 649, 656 (7th Cir. 2004) (citing 28 U.S.C. § 1915(e)(1)); *Luttrell v. Nickel*, 129 F.3d 933, 936 (7th Cir. 1997). In deciding whether to appoint counsel, the Court must "first determine if the indigent has made reasonable efforts to retain counsel and was unsuccessful or that the indigent was effectively precluded from making such efforts." *Gil*, 381 F.3d at 656 (quoting *Jackson v. County of McLean*, 953 F.2d 1070, 1072 (7th Cir. 1992)). If so, the Court must consider: (1) whether, given the degree of difficulty of the case, Plaintiff appears competent to try it himself; and (2) whether the assistance of counsel would provide a substantial benefit to the Court or the parties, potentially affecting the outcome of the case. *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007); *Gil*, 381 F.3d at 656.

After considering these factors, the Court concludes that appointment of counsel is not warranted. While Plaintiff avers that he has made reasonable efforts to retain private counsel, he has not alleged a physical or mental disability that might preclude him from adequately investigating the facts giving rise to his complaint. Plaintiff's case, at the present time, does not involve complex issues, complex discovery, or an evidentiary hearing. In addition, the Court grants *pro se* litigants wide latitude in the handling of their lawsuits. Therefore, Plaintiff's motion for appointment of counsel is denied without prejudice.

*Wm. J. Hibbler* (signature)